**In re A & W PUBLISHERS, INC., Debtor.**

**A & W PUBLISHERS, INC., Plaintiff,**

v.

**BISON BOOKS LIMITED, Defendant.**

**No. 84 Civ. 2261 (ADS).**

United States District Court, S.D. New York.

May 31, 1984.

Arthur Ohringer, Edward Tessler, Carrie Teitcher, Andrew DeNatale, Strook & Strook & Lavan, New York City, for A & W Publishers, Inc.

Robert J. Ciovacco, Bases, Lawrence, Ciovacco & Walsh, Garden City, N.Y., for Bison Books Ltd.

MEMORANDUM AND ORDER

SOFAER, District Judge.

The appellant Bison Books, Ltd., a British corporation, appeals from a Bankruptcy Court's exercise of jurisdiction over it, arguing that the ruling violates due process and also was based on improper service. The Bankruptcy Court awarded judgment

against appellant for $95,375.35, finding that the bankrupt had made preferential transfers to appellant pursuant to a settlement agreement which the law required be set aside.

Appellant publishes books for sale in Britain and for export. It alleged below that, as of January 1, 1983, it had discontinued all sales to the United States. Prior to that time, appellee A & W purchased books for resale in the United States "primarily" through telephonic and written communications. A & W failed to pay for the books and, after negotiations "also primarily through telephonic and written correspondence," Appellant's Brief at 3, the parties reached a settlement on February 3, 1983. The settlement agreement provided for a schedule of payments by A & W to be made to Bison "at its office in Greenwich Connecticut" or by wire transfer "to Bison's bank account number 011 900 571" at a Connecticut bank. Settlement Agreement (Exhibit A to Answer in Opposition to Motion to Dismiss) ¶ 2(a). A & W was also required to deliver an auditor's certificate to Bison "at its office in Greenwich, Connecticut." *Id.* ¶ 2(b). In addition, the agreement annexed invoices from Bison to A & W showing Bison's business address in Connecticut, designated a New York attorney to hold a confession of judgment from A & W for Bison's benefit for enforcement in the event of default, and stated that New York law would govern its provisions. *Id.* ¶¶ 3, 7.

A & W made several payments pursuant to this agreement before June 3, 1983, when it filed a petition for reorganization with the Bankruptcy Court. Appellee attempted to serve appellant with a copy of a summons and complaint by leaving them with an employee of the American corporation designated in the settlement agreement to receive appellee's payments. The complaint sought to recover $78,613.13 as preferential transfers and $11,450.00 as profit due appellee on an unauthorized post-petition transfer. Appellant Bison Ltd. appeared, and was appointed to the Creditors' Committee of A & W. One of its directors, Sidney Mayer, listed Bison's busi-

ness address on the Appointment of Committee of Unsecured Creditors as 17 Sherwood Place, Greenwich, Ct. 06830. Instead of answering, appellant moved to dismiss, arguing lack of jurisdiction and improper service. Appellee contended service was adequate, but nevertheless served Mr. Mayer personally at a Creditors Committee meeting on December 1, 1983. *See* Answer in Opposition to Motion to Dismiss, ¶ 7. The Bankruptcy Judge denied Bison Ltd.'s motion and entered a default judgment against it for the full amount claimed, plus interest, or $95,375.35. At Bison Ltd.'s request execution on the judgment was stayed on condition that it post a bond for $100,000. No bond has yet been posted, however.

■ Appellant correctly contends that a minimum-contacts test applies in bankruptcy to protect foreign corporations against being subjected to jurisdiction in this country without due process of law. *See In re Fotochrome, Inc.*, 377 F.Supp. 26, 29 (E.D.N.Y.1974) (construing former bankruptcy statute), *aff'd,* 517 F.2d 512 (2d Cir.1975); *cf. Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972) (Friendly, C.J.) (exercise of jurisdiction pursuant to section 27 of Securities Exchange Act over foreigners not present in the United States subject to fifth amendment due process limits). *But see In re Schack Glass Industries Co.,* 20 B.R. 967, 970 (Bkrtcy.S.D.N.Y.1982). *Compare id. with, e.g., In re Whippany Paper Board Co.,* 15 B.R. 312, 315 (Bkrtcy.D.N.J. 1981) (minimum-contacts test "has no particular relevance" in bankruptcy suit between domestic corporations because federal statute confers jurisdiction and provides for nationwide service). The meaning of that test in the special context of bankruptcy proceedings need not be confronted in this case, however. Appellant's contacts with this jurisdiction easily satisfy due process, and would satisfy even the standard required under New York's long-arm statute. Appellant not only sold goods here through appellee, but came here to collect funds owed it on those goods. In addition,

it used a subsidiary, an American bank, a New York lawyer, and the enforcement mechanisms of New York's legal system to set up a method for collecting the sums it was due, or alternatively to enforce the confession of judgment it had obtained. Normally, settlement efforts may not be relied on to create a basis for jurisdiction, though admissions of fact in the settlement papers might well be sufficient in themselves to show the minimum contacts required by due process. Here, however, the settlement agreement was a central part of the means by which appellant obtained the unlawful preferential and post-petition payments challenged in this case. Under this special circumstance, activities and arrangements connected with the settlement may properly be considered for jurisdictional purposes, since they show that appellant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, — U.S. —, —, 104 S.Ct. 1868, 1869, 80 L.Ed.2d 404 (1984).

The present suit does not concern defendant-appellant's conduct as a business in arranging the transactions that led to its status as creditor, but its conduct as creditor in arranging for preferential payments through a settlement which was to be implemented and enforced by financial and legal mechanisms in this country. An arrangement for preferential payments may in itself confer jurisdiction over the creditor involved where the claim at issue is to the very payments which the arrangement made possible.

The judgment of the Bankruptcy Court is affirmed.

SO ORDERED.